IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | NO. 11-130-1 |
| ARTHUR THORNTON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION**

**Slomsky, J.**                                                                                          **May 10, 2012**

## I.      INTRODUCTION

Presently before the Court is Defendant's Motion to Suppress Evidence.  (Doc. No. 15.) In the Motion, Defendant challenges the sufficiency of a probable cause affidavit submitted in support of a search warrant.  The Government filed a Response in Opposition (Doc. No. 23), and the Court held a hearing on the Motion on March 19, 2012.[1]  Upon consideration of the parties' briefs, and the evidence offered and the arguments of counsel at the hearing, Defendant's Motion to Suppress will be denied.

## II.     FACTUAL BACKGROUND

Defendant Arthur Thornton is charged in the Indictment with offenses involving or

---

[1]  At the March 19, 2012 hearing, the Government presented testimony from Officer Brian Myers, the affiant on the probable cause affidavit.  In addition, exhibits were introduced such as pre-recorded buy money, property receipts for items seized, and the search warrant itself. Moreover, surveillance officer Jaime Brown testified, and a stipulation was entered into on the testimony of surveillance officer Richard Woertz.

related to the possession and distribution of controlled substances.[2]  (Doc. No. 1.)  Supporting

five of the Counts is evidence seized during a November 19, 2010 search of Defendant's home, a

residential property located at 855 Brill Street in Philadelphia, Pennsylvania.[3]  The residence was

searched pursuant to a search warrant obtained by Philadelphia Police Officer Brian Myers.[4]

(Doc. No. 23, Ex. G-1.)  In the Motion to Suppress, Defendant argues that the affidavit of Officer

Myers in support of the warrant was defective because it lacked probable cause.[5]

_____

[2]  Specifically, Defendant is charged with the following offenses:

(1)   On November 3, 2010, distribution of oxycodone within 1,000 feet of an elementary school (Counts One and Two);

(2)   On November 16, 2010, distribution of oxycodone within 1,000 feet of an elementary school (Counts Three and Four);

(3)   On November 19, 2010, possession with the intent to distribute approximately 52 grams of crack-cocaine within 1,000 feet of a high school (Counts Five and Six);

(4)   On November 19, 2010, possession with the intent to distribute cocaine, 98 tablets of alprazolam, and 569 tablets of oxycodone within 1,000 feet of a high school (Counts Seven and Eight);

(5)   On November 19, 2010, possession of a defaced firearm in furtherance of drug trafficking as a convicted felon (Counts Nine and Fourteen);

(6)   On January 11, 2011, distribution of oxycodone within 1,000 feet of a high school (Counts Ten and Eleven); and

(7)   On January 13, 2011, possession with the intent to distribute 490 tablets of oxycodone and 581 tablets of alprazolam within 1,000 feet of a high school (Counts Twelve and Thirteen).

(Doc. No. 1.)

[3]  Police officers seized several items of contraband found in Defendant's residence that are evidence in support of the offenses charged in Counts Five, Six, Seven, Eight, Nine, and Fourteen of the Indictment.  (Doc. No. 1; Doc. No. 23 at 2.)

[4]  The warrant was issued on November 18, 2010 by a Philadelphia County Judge, but it is unclear from the signature which judge issued the warrant.  (Doc. No. 23, Ex. G-1.)

[5]  In Defendant's Motion and Supporting Memorandum (Doc. Nos. 15 and 16), he also argues that the information relied upon to issue the warrant was stale.  At the March 19, 2012

Integral to this dispute is the affidavit of probable cause drafted by Officer Myers.  This affidavit led to the issuance of the warrant by a duly authorized magistrate for the search of Defendant's residence at 855 Brill Street and for the seizure of the controlled substances and related items.  The warrant permitted the seizure of any items used to manufacture and distribute drugs covered by the Pennsylvania Controlled Substances Act.  (Doc. No. 23, Ex. G-1.)

The affidavit of probable cause, prepared by Officer Myers, states in full:

### AFFIDAVIT OF PROBABLE CAUSE[6]

Between the dates of 11-13-10 and 11-14-10[7] (days are staggered to protect the identity of the Confidential Informant) P/O Myers met with a Confidential Informant ["C/I"] who relayed information of a B/M identified as Arthur Thorton [sic] operating a [t]annish colored Hummer H2 vehicle selling Percocet's [sic] and Oxycotine using a cell phone# 267-407-9550 in the 35th [D]ist. Area.  The C/I also relayed information that Thorton [sic] keeps the pills in a clear sandwich bag and hides the bag in the [H]ummer by the front passenger seat.  Based on this information P/O Myers along with P/O Woertz#7328 met with the C/I [and] search[ed] the C/I for any illegal contraband or [United States Currency ("USC")] with negative results.  The C/I dialed the cell# 267-407-9550 and spoke to a male voice on the phone, the C/I and Male voice agreed to purchase (2) Oxy 80 pills (Oxycotine 80 milligrams) and (2) Percocet's [sic] for $130 in the confines of the 35th Dist[.] (Location confidential to protect the identity of the C/I).  P/O Myers supplied the C/I with $130 pre[-]recorded [buy money], P/O Myers observed the C/I meet with a B/M (I'd

hearing, Defendant withdrew the staleness argument.  Accordingly, the staleness argument is discussed only briefly in this Opinion.  See footnote 8, *infra*.

[6]  The affidavit of Officer Myers is minimally edited to preserve the nature of the facts that were before the magistrate judge when he or she determined that there was sufficient probable cause to issue the warrant.  See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (holding that when reviewing the probable cause determination of a magistrate judge, the district court should look only to the facts that were before the magistrate when he or she issued the warrant).

[7]  The Government's Response in Opposition to Defendant's Motion to Suppress notes that the dates cited in the affidavit are a typographical error and should read "11-3-10" and "11-4-10." (Doc. No. 23 at 7 n.14.)  The incorrect dates do not affect the decision of the Court on the Motion to Suppress.

[identified] as Arthur Thorton [sic]) who was operating a tan in color Hummer H2 with a Pa # HNB 2224, the C/I was observed handing Thorton [sic] the pre[-]recorded buy money and in return Thorton handed the C/I small objects. The C/I left the area[,] meeting with P/O Myers and P/O Woertz turning over (2) green pills scored 80 OP alleged Oxycotine along with (2) white pills alleged Percocet's [sic]. The C/I was again searched for any illegal contraband or USC with negative results. The pills were placed on [Property Receipt ("Pr")]#2946101. P/O Brown followed Thorton [sic] to the area of 20th and Nedro St[.] where P/O Brown observed Thorton [sic] meet with a B/M wearing a grey sweatshirt. P/O Brown observed the B/M hand Thorton [sic] USC and in return Thorton [sic] handed the B/M objects. The B/M left the area in a black vehicle and Thorton [sic] left the area followed to 855 Brill St[.] where Thorton [sic] entered the property out of sight.

Between the dates of 11-15-10 and 11-16-10 P/O Myers#6657 along with P/O Brown#4617 met with the same C/I searching the C/I for any illegal contraband or USC with negative results while P/O Woertz set-up a surveillance of 855 Brill St[.] observering the Hummer H2 Pa# HNB 2224 parked on the block. A short time later P/O Woertz observed Thorton [sic] exit 855 Brill St[.] entering into the Hummer leaving the area. P/O Myers instructed the C/I to call Thorton [sic] to purchase Oxycotine. The C/I dialed cell# 267-407-9550 speaking to a male voice on the phone. The C/I and the male voice agreed to purchase (2) oxy 80's (Oxycotine) for $90 in the confines of the 35th. P/O Woertz followed Thorton [sic] to the C/I where P/O Myers observed the C/I engage Thorton [sic] in conversation. The C/I handed Thorton [sic] the $90 pre[-]recorded buy money and in return Thorton [sic] handed the C/I small objects. The C/I left the area[,] meeting with P/O Myers [and] turning over (2) green pills scored 80 alleged Oxycotine which P/O Myers later placed on Pr#2946223. The C/I was again searched for any illegal contraband or USC with negative results.

P/O Myers ran the Hummer H2 Pa# HNB 2224 thru BMV with no owner information available since the tag [was] in temporary status. Based on your Affiant P/O Myers' experience in narcotics[, he] believes Thorton [sic] is storing and selling narcotics out of 855 Brill St[.] due to the fact that Police observed Thorton [sic] sell narcotics to a C/I then return to 855 Brill St. Thorton [sic] was also observed exiting 855 Brill St[.] and followed by police to a location where Thorton [sic] again sold to a C/I.

(Doc. No. 23, Ex. G-1 "Affidavit of Probable Cause.")

As noted above, on November 19, 2010, members of the Philadelphia Police

Department's Narcotics Field Unit, along with several deputized federal task force officers,

executed the warrant to search the residence at 855 Brill Street and seize contraband related to Defendant's drug trafficking operation.  At 6:35 a.m., the officers entered the residence and discovered Daneen Thornton, Defendant's wife, and two minor children sleeping on the couch in the living room.  The officers found a third minor child sleeping in a basement room.

The officers located Defendant on the second floor in a bedroom.  He appeared concerned with the bedroom closet and directed his movements toward the closet.  The officers ordered Defendant to freeze and show his hands.  He then sat on the bed and was handcuffed by Officer Myers in the presence of other officers.

The items seized during the search, and central to this suppression motion, include the following:

(1)     A defaced handgun found under Defendant's mattress;

(2)     Several items of contraband found in Defendant's bedroom closet, such as

(a)     almost 6 grams of cocaine;
(b)     approximately 52 grams of "crack" cocaine;
(c)     98 blue alprazolam tablets;
(d)     569 yellow, white, and green oxycodone tablets;
(e)     1 digital scale with cocaine residue;
(f)     $1,960 cash;
(g)     1 box of sandwich bags and numerous un-used plastic yellow packets;
(h)     identification in the name of Defendant; and
(i)     a cell phone with the same number as the one dialed by the Confidential Informant ("C/I") to contact Defendant to set up the sales of November 3, 2010 and November 16, 2010.

(Doc. No. 23 at 3-4.)

Each drug transaction described in the affidavit of Officer Myers occurred near the intersection of 20th and Nedro Streets and within 650 feet of an elementary school.  The drugs confiscated from Defendant's home were possessed within 1,000 feet of a high school.  (Id. at 4-

5

5.)

## III.   STANDARD

"On a motion to suppress, the government bears the burden of showing that each

individual act constituting a search or seizure under the Fourth Amendment was reasonable."

United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005); see also United States v. Coward, 296

F.3d 176, 180 (3d Cir. 2002).  The burden of proof is by a preponderance of the evidence.

United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).

Where a defendant seeks to suppress evidence obtained pursuant to a warrant issued by a

magistrate judge, the Third Circuit has held that:

> [T]he duty of a reviewing court is simply to ensure that the magistrate had a
> substantial basis for . . . conclud[ing] that probable cause existed.  Keeping in mind
> that the task of the issuing magistrate is simply to determine whether there is a fair
> probability that contraband or evidence of a crime will be found in a particular place,
> a reviewing court is to uphold the warrant as long as there is a substantial basis for
> a fair probability that evidence will be found.

United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (internal citations and quotations

omitted).  "In making this determination, the Court confines itself 'to the facts that were before

the magistrate judge, i.e. the affidavit, and [does] not consider information from other portions of

the record.'"  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting United States v.

Jones, 994 F.2d 1051, 1055 (3d Cir. 1993)).

## IV.   DISCUSSION

Defendant argues that the warrant used by the Philadelphia Police Officers and federal

agents to enter his home was defective because the warrant was not based on sufficient probable

cause[8] and that the evidence seized should be suppressed at trial. The Government contends that the warrant was not defective. Rather, according to the Government, the affidavit of Officer Myers established sufficient probable cause for the magistrate judge to issue the search warrant at issue here. For reasons that follow, the Court will deny Defendant's Motion to Suppress because the magistrate judge had sufficient probable cause as set forth in the affidavit of Officer Myers to issue the warrant.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Probable cause is a "practical, nontechnical conception . . . . not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 231-32 (1983). Probable cause exists when, under the totality of the circumstances, "there is a fair probability that

---

[8] As stated in footnote 5, Defendant also claimed that the information relied upon to issue the warrant was stale, but at the March 19, 2012 hearing this assertion was withdrawn. Even if Defendant had maintained the staleness argument, it would have been to no avail. Two days passed between the observation of the second drug transaction on November 16, 2010 and the issuance of the warrant on November 18, 2010. There is no bright-line rule regarding when the information contained in an affidavit becomes "stale." United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993). A period of two or three days, however, is not significant enough to conclude that the magistrate judge relied upon stale information when issuing the warrant to search Defendant's residence. See, e.g., United States v. Harris, 403 U.S. 573, 579 (1971) (finding that two-week-old information about the purchase of contraband whiskey was not stale); United States v. Caple, 403 F. App'x 656 (3d Cir. 2010) (stating that "courts have upheld determinations of probable cause in trafficking cases involving . . . long[] periods" and rejecting the defendant's argument that the several weeks between the last transaction and issuance of a warrant made the information stale).

contraband or evidence of a crime will be found in a particular place." Id. at 238.  The Third

Circuit has held that:

> [P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime. . . .  A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

United States v. Hodge, 246 F.3d 301, 305-06 (3d Cir. 2001) (internal citations and quotations

omitted).  In other words, direct evidence linking the place to be searched and the crime is not

necessary to establish probable cause.  Id. at 305.

In determining whether a warrant should be issued, "[t]he task of the issuing magistrate is

simply to make a practical, common-sense decision, whether, given all the circumstances set

forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a

crime will be found in a particular place."  New York v. P.J. Video, Inc., 475 U.S. 868, 876

(1986); United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-

Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002).  As already noted in section III, supra, a district

court's review of the initial probable cause determination made by a magistrate judge is

deferential.  Gates, 462 U.S. at 236; Hodge, 246 F.3d at 305.  When examining the warrant at

issue, a court must consider the supporting affidavit as a whole and read it in a common-sense,

nontechnical manner.  United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997).  Any doubts

should be resolved primarily in favor of the warrant resting on probable cause.  Ninety-Two

Thousand Four Hundred Twenty-Two Dollars, 307 F.3d at 147.  Ultimately, the district court's

task is to ensure that the magistrate had a "substantial basis" for concluding that probable cause

existed.  Gates, 462 U.S. at 236.

Here, the affidavit of Officer Myers more than adequately established probable cause to search Defendant's residence at 855 Brill Street.  The affidavit described the following events: (1) the November 3, 2010[9] encounter and sale of drugs from the Defendant to the C/I; (2) the observation of police that Defendant entered 855 Brill Street after the November 3, 2010 transaction; (3) on November 16, 2010, police set up a surveillance of 855 Brill Street to observe Defendant's point of departure; (4) the surveillance team watched Defendant leave 855 Brill Street and meet with the C/I; and (5) upon meeting the C/I, the two engaged in another drug transaction.

Defendant argues that there was an insufficient nexus between his alleged drug sales to the C/I and his residence at 855 Brill Street.  However, given the details described above, Defendant's argument is unavailing.  The affidavit of Officer Myers demonstrates that police had substantial reason to believe that Defendant possessed drugs in his residence at 855 Brill Street.  Police officers saw him leave the residence on November 16, 2010 before engaging in a drug transaction with the C/I.  They also saw him return to the residence after completing the drug transaction with the C/I on November 3, 2010.  Additionally, Officer Myers attested that based on his experience in narcotics, and given the observations of the surveillance team, he believed that Thornton stored and sold narcotics from the Brill Street property.  See United States v. Price, 558 F.3d 270, 282-83 (3d Cir. 2009) (finding probable cause to search a defendant's home where

_____

[9] As stated in footnote 7, the inclusion of the dates "11-13-10" and "11-14-10" was a typographical error in the affidavit.  (Doc. No. 23 at 7 n.14.)  Regardless of this error, it is clear that an initial encounter occurred between the Confidential Informant and Defendant.  Because the affidavit should be read in a common-sense and nontechnical manner, United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997), this typographical error does not detract from the probable cause determination.

the affiant stated in the affidavit that based on his experience, an individual who engages in drug

trafficking often keep drugs, money, and other contraband in furtherance of drug trafficking in

his home).  The totality of this information as set forth in the affidavit of Officer Myers provided

the magistrate with a substantial basis to issue the search warrant for 855 Brill Street.  The

warrant was based on sufficient probable cause and therefore not defective.

**V.      CONCLUSION**

The affidavit of probable cause of Officer Myers contained sufficient information to

support the magistrate judge's probable cause determination and the issuance of the search and

seizure warrant.  Accordingly, Defendant's Motion to Suppress will be denied.

An appropriate Order follows.